**ROCKY FORK HUNT & COUNTRY CLUB, Appellant,**

**v.**

**TESTA, Auditor, et al., Appellees.**

[Cite as *Rocky Fork Hunt & Country Club v. Testa* (1995), 100 Ohio App.3d 570.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE07–1047.

Decided Jan. 31, 1995.

*Porter, Wright, Morris & Arthur, Dixon F. Miller* and *George M. Hauswirth,* for appellant.

*Michael Miller,* Prosecuting Attorney, and *James R. Gorry,* Assistant Prosecuting Attorney, for appellees.

---

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Rocky Fork Hunt & Country Club, appellant, from the June 21, 1994 judgment entry of the Franklin County Court of Common Pleas which affirmed the decision of the Franklin County Board of Revision ("BOR") which had determined that appellant's property had been converted to nonagricultural use and had ordered a recoupment charge to be levied upon the property at issue.

Appellant sets forth the following assignments of error:

"Assignment of Error Number One

"The Franklin County Auditor is obligated to comply with the statutory procedure in O.R.C. § 5713.32. The court of common pleas erred in concluding that the auditor's improper notice failed to prejudice appellant.

"Assignment of Error Number Two

"The court below erred in concluding that a conversion had occurred with respect to Parcel 19."

This case involves R.C. 5713.30 through 5713.38, which apply to the valuation and taxation of agricultural land and which specifically concern whether a certain parcel of land comprising approximately one hundred fifty-seven acres ("Parcel 19") qualifies to be valued at its "current agricultural use value" ("CAUV") in accordance with R.C. 5713.30 and 5713.31.

Parcel 19 comprises approximately one hundred fifty-seven total acres, of which approximately one hundred twelve acres are woodland, approximately thirty-five acres are farmland and approximately ten acres are considered to be wasteland. These acres surround, to a certain extent, Parcel 740 upon which appellant's social and recreational activities take place.

R.C. 5713.30 provides definitions and states, in pertinent part, as follows:

"(A) 'Land devoted exclusively to agricultural use' means:

"(1) Tracts, lots, or parcels of land totaling not less than thirty acres which, during the three calendar years prior to the year in which application is filed under section 5713.31 of the Revised Code, and through the last day of May of such year, were devoted exclusively to * * * the production for a commercial purpose of field crops, tobacco, fruits, vegetables, timber, nursery stock, ornamental trees, sod, or flowers or that were devoted to and qualified for payments or other compensation under a land retirement or conservation program under an agreement with an agency of the federal government;

" * * * *

"(B) 'Conversion of land devoted exclusively to agricultural use' means any of the following:

" * * * *

"(3) The failure of such land or portion thereof to qualify as land devoted exclusively to agricultural use for the current calendar year as requested by an application filed under such section."

If a certain piece of property qualifies as "land devoted exclusively to agricultural use," that property is valued for real property tax purposes at the current value such land has for agricultural use. See R.C. 5713.31. As such, the land is taxed at a much lower rate than it would be otherwise. An owner of land files an

initial application with the county auditor requesting that its land be valued at the CAUV. Thereafter, the owner files renewal applications with the auditor. Pursuant to R.C. 5713.31, the auditor must notify the current owner of any piece of property contained in the preceding tax year's agricultural land tax list that the owner has failed to file an initial or a renewal application. Furthermore, pursuant to R.C. 5713.32, prior to the first Monday in August the county auditor must notify each person who filed an application or an amended application under R.C. 5713.31 if the auditor determines that the land is not devoted exclusively to agricultural use and the reason for such determination.

R.C. 5713.35 concerns the conversion of land currently on the agricultural land tax list. R.C. 5713.35 provides as follows:

"On or before the second Monday in September the county auditor shall examine the agricultural land tax list maintained under section 5713.33 of the Revised Code and determine if there has been a conversion of land devoted exclusively to agricultural use of any tract, lot, or parcel of land on such list.

"Upon determining there has been a conversion of land devoted exclusively to agricultural use the auditor shall determine the dollar amount of the charge levied against such tract, lot or parcel of land under section 5713.34 of the Revised Code and shall place such amount as a separate item on the tax list for the current tax year to be collected by the county treasurer in the same manner and at the same time as real property taxes levied against such land for the current calendar year are collected. * * * "

Pursuant to R.C. 5713.34, which provides for the recoupment of tax savings on converted lands, the charge levied on such converted land is an amount equal to the amount of the tax savings on the converted land during the four tax years immediately proceeding the year in which the conversion occurred.[1]

By letter dated September 1, 1992, the Franklin County Auditor notified appellant that, in the course of its field review of parcels currently on the agricultural land tax list, the auditor had determined that Parcel 19 is not devoted exclusively to commercial agricultural use. The letter itself indicated that it concerned the following:

"Denial of application for 1992 Current Agricultural Use Valuation for parcel # 170–000019, pursuant to R.C. 5713.32."

---

1. As of March 1993, the statute has been modified to provide for recoupment in an amount equal to the amount of the tax savings on the converted land during the three tax years immediately proceeding the year in which the conversion occurred.

The letter did not give any specific reasons why Parcel 19 was being removed from the CAUV program but simply stated that Parcel 19 was not devoted exclusively to commercial agricultural use.

In the first assignment of error, appellant argues that the auditor was required to notify appellant of its determination in accordance with R.C. 5713.32. As such, prior to the first Monday in August 1992, the county auditor was required to notify appellant by certified mail of its determination because appellant is a person who filed an application or an amended application pursuant to R.C. 5713.31 and the auditor determined that appellant's land was not devoted exclusively to agricultural use. Inasmuch as the letter sent to appellant by the auditor was not mailed until September 1, 1992, and because it did not provide specific reasons why the land was now not considered devoted exclusively to agricultural use, this court should reverse the trial court which upheld the decision of the BOR.

The Ohio Supreme Court set forth the standard of review for decisions of the BOR in *Black v. Bd. of Revision* (1985), 16 Ohio St.3d 11, 16 OBR 363, 475 N.E.2d 1264. The court stated as follows:

"R.C. 5717.05 does not require a trial *de novo* by courts of common pleas on appeals from decisions of county boards of revision. The court may hear the appeal on the record and evidence thus submitted, or, in its discretion, may consider additional evidence. The court shall independently determine the taxable value of the property whose valuation or assessment for taxation is complained of, or, in the event of discriminatory valuation, shall determine a valuation that corrects such discrimination. The judgment of the trial court shall not be disturbed absent a showing of abuse of discretion." *Id.* at syllabus.

The Franklin County Court of Common Pleas concluded that R.C. 5713.34 and 5713.35 apply to *conversions* resulting in an attempt of recoupment by the auditor and that R.C. 5713.32 does not apply to findings of conversions by the auditor but instead applies to new applications and renewal applications which are denied by the auditor. The court did note, however, that the September 1, 1992 letter from the auditor did cite R.C. 5713.32 and the court indicated that the holding of the Board of Tax Appeals in *May v. Tuscarawas Cty. Bd. of Revision* (Apr. 30, 1993), BTA No. 89-A-312, unreported, was difficult to apply. However, the court ultimately concluded that appellant had not been prejudiced inasmuch as it had appealed timely and had the opportunity to present evidence on the issues involved.

This court concludes that R.C. 5713.34 and 5713.35 apply in the instant case and that, although the auditor's letter cited R.C. 5713.32, that simply is not the statute which applies in conversion actions. As such, the September 1, 1992 letter from the auditor to appellant met the requirements of R.C. 5713.32 because

the auditor made its decision "[o]n or before the second Monday in September" 1992. As such, the trial court did not abuse its discretion in determining this issue.

Appellant's first assignment of error is not well taken and is overruled.

In the second assignment of error, appellant argues that the trial court erred in concluding that a conversion had occurred with respect to Parcel 19. Based upon a review of the record, appellant's second assignment of error will be sustained as it relates to the thirty-five acres of Parcel 19 which were used for the planting of agricultural crops and will be overruled as it relates to the one hundred twelve acres of woods which surround appellant's Parcel 704.

The evidence in the record concerning the thirty-five acres of Parcel 19 for which appellant requested a CAUV based upon agricultural use is as follows. Donald Casto, the current president of appellant, testified that for the past six or seven years, the time which Mr. Casto had been on the board of appellant, the thirty-five acres of farmland had been leased to a farmer every year. Mr. Casto identified two contracts, one dated March 5, 1991 and the second dated January 29, 1992, which provided that John Morrison was leased the subject acreage for the purposes of farming that land. Mr. Morrison testified that he plowed the subject property in early 1992 with the intention of planting corn. However, due to heavy rains, the land became very wet and he was unable to plant the corn in a timely fashion. As such, in an effort not to lose money, Mr. Morrison made the decision to plant winter wheat on that section of property. Although October is the typical time for planting winter wheat, Mr. Morrison stated that he was unable to plant the winter wheat until the first of November, again due to heavy rains.

Both the BOR and the trial court concluded that the approximate thirty-five acres set aside as farmland had not been devoted exclusively to agricultural use because these acres had not been planted and were not in agricultural use on the last day of May 1992. Citing this court's decision in *Barbee v. Testa* (Mar. 31, 1994), Franklin App. No. 93APE08–1193, unreported, the trial court concluded that there are no excuses recognized for failure to farm the land within the statutory scheme. In *Barbee*, the land owners had a ten-acre section of land which was on the west side of I–270 from which they sold gravel in 1986. They asserted that it was their intention to farm the west parcel after the gravel was removed; however, the property had flooding problems when a drain tile under I–70 was found to be clogged and they were not able to plant on the property.

This court finds that the present case is distinguishable from the *Barbee* case. In the present case, the only evidence in the record indicates that the thirty-five acres had been leased for farming during the time that Mr. Casto was a member

of the board and had qualified for the CAUV program for those years. Mr. Casto presented leases for 1991 and 1992 leasing the land to Mr. Morrison specifically for the purpose of farming it. There is no allegation that the land had not been farmed up until the inspection made by the auditor in 1992 when the auditor found that, at the time of the inspection, the land was not being used for agricultural purposes. Mr. Morrison testified specifically that he had prepared the field for planting of a spring corn crop but that he was unable to plant that crop due to rains. In *Barbee*, the appellants asserted that it was their *intention* to farm the west parcel after the gravel was removed. There is no evidence that any agricultural crop planted for a commercial purpose was ever planted on that west parcel. To the contrary, the record in the present case indicates that this section had been planted but that, due to circumstances outside the control of appellant or the farmer to whom appellant leased the property, the farmer was unable to have a crop planted in the spring of 1992 when the field review was conducted.

As such, this court concludes that the trial court abused its discretion in affirming the BOR with respect to those thirty-five acres of land which were leased to Mr. Morrison as farmland and those acres should be returned to the CAUV program.

■ The testimony concerning the one hundred twelve acres of woodland is as follows. Both Mr. Casto and Richard H. Morris, a landscape architect hired by appellant in 1979, stated that a certain portion of the woodland property had been cleared-cut in the late 1960's or early 1970's. However, since that time, no trees have been taken from the area and sold commercially. Casto testified that the board of appellant wanted to establish a program for the occasional commercial harvesting of trees from the woodland. Mr. Morris testified that he was contacted to do work for appellant concerning the woodlands not for the merchantable value of the woods, but for its health and vigor and the aesthetic value for the club members. Other than the one cutting in the late 1960's or early 1970's, no timber has been taken from the woodland portion of Parcel 19 to be sold commercially.

This court agrees with the conclusion reached by the trial court that the one hundred twelve acres of woodland were not devoted exclusively to agricultural use and did not qualify for the CAUV program.

Appellant's second assignment of error is sustained in part and overruled in part.

Based on the foregoing, appellant's first assignment of error is overruled. Appellant's second assignment of error is sustained as it pertains to the approximate thirty-five acres of Parcel 19 which appellant requested to be included in the

CAUV program and is overruled as it pertains to the approximately one hundred twelve acres of woodland which appellant requested be included in the CAUV program. As such, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part as indicated. This matter is remanded for further proceedings in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

PETREE and HOLMES, JJ., concur.

ROBERT HOLMES, J., retired, of the Ohio Supreme Court, sitting by assignment.