DECISION.
In 1985, the city of Cincinnati added a new chapter to its municipal code, the purpose of which was to establish fees for stormwater drainage and to create a new public utility, the Stormwater Management Utility ("SMU"), to manage and monitor stormwater runoff. See Cincinnati Municipal Code 720 Scope to 720-3. The code authorized the assessment of a storm drainage fee on property owners based upon each property's area and intensity of development factor ("IDF"). See Cincinnati Municipal Code 720-61. In order to determine how fees are assessed on various types of properties, the code divides properties into three categories. See Cincinnati Municipal Code 720-55.
Class A properties are residential properties with 10,000 or less square feet of area, Class B properties are residential properties with greater than 10,000 square feet of area, and Class C properties are multi-family residential properties and nonresidential properties. See Cincinnati Municipal Code 720-55. Class A and Class B properties have set IDFs. Class C properties are further divided into ten land-use classifications: commercial, industrial, multi-family, transportation, institutional, residential Class A, residential Class B, agricultural, park, and undeveloped. See Cincinnati Municipal Code 720-57. Each land-use classification is assigned an IDF factor, which ranges from .85 for commercial to 0 for undeveloped. See id. The assignment of a land-use classification and corresponding IDF factor can be "based upon the records of the county recorder or auditor, the city, or through field examination or photogrammetric analysis." Cincinnati Municipal Code 720-57.
Once an IDF is assigned to a Class C property, the rate charged to the property is determined by multiplying the IDF by the area of the property to determine the equivalent runoff units ("ERU"). See Cincinnati Municipal Code 720-81(3). The ERU is then multiplied by the charge per ERU to arrive at the monthly storm-drainage service fee. Id. Based upon this classification system, a higher IDF results in a higher monthly fee.
The IDFs for Class C properties were initially based upon the land usage assigned to each property by the county auditor. Subsequently, the SMU evaluated properties throughout the city based upon their actual contribution to stormwater runoff. For some properties, the SMU adjusted the monthly storm-drainage fee by developing hybrid IDFs for Class C properties. This was done by conducting a site and map survey of those properties. The SMU determined what percentage of each property was devoted to commercial, agricultural, residential, or another land use. The various percentages were multiplied by each property's square footage and by the corresponding IDF to determine the actual ERU.
When Fred C. Koch Greenhouses, Inc. ("Koch"), received its first stormwater bill in 1985, it sought from the SMU an administrative appeal of its assessed stormwater fee. The SMU reviewed Koch's property and determined that it was 52% commercial, 14% agricultural, and 34% residential. Based upon these land-use percentages, a revised, hybrid IDF of .6 was assigned to Koch. Apparently satisfied with this new IDF, Koch did not appeal. Koch has since continued to pay its monthly stormwater bills.
In 1998, Koch filed in the Hamilton County Court of Common Pleas a declaratory-judgment action, seeking to force the SMU to rate its property as strictly agricultural and to assign Koch an IDF of .08. Koch believed that because its business was agricultural, it was entitled to the agricultural IDF, regardless of how much its property contributed to stormwater runoff. Koch claimed that because there were two other similar properties that also operated greenhouses and were given an agricultural rating, Koch deserved the same rating.
The city responded to Koch's complaint with a motion to dismiss, claiming that Koch had failed to follow administrative procedures, and with a motion for summary judgment. Koch responded with its own motion for summary judgment, which was granted by the trial court. The city now appeals the trial court's decision, claiming that the trial court erred in granting summary judgment to Koch and in failing to grant the city's motion to dismiss or its motion for summary judgment.
Declaratory judgment may be a proper means to challenge the constitutionality of an ordinance, despite the availability of other adequate remedies. See G.S.T. v. Avon Lake (1976), 48 Ohio St.2d 63,357 N.E.2d 38; see, also, Civ.R. 57. Declaratory judgment is improper, however, when there are sufficient administrative remedies to resolve an issue that does not involve the constitutionality of an ordinance. See Rocky Fork Hunt Country Club v. Testa (1997), 120 Ohio App.3d 442, 446,698 N.E.2d 80, 83, citing Fairview Gen. Hosp. v.Fletcher (1992), 63 Ohio St.3d 146,586 N.E.2d 80. An exception to this rule applies when the party bringing the declaratory-judgment action demonstrates that there is no administrative remedy available, or that resorting to an administrative remedy would be onerous, unusually expensive, or futile. See Columbia Oldsmobile, Inc. v.Montgomery (Nov. 20, 1991), Hamilton App. No. C-890382, unreported. Although failure to pursue an administrative remedy is not a jurisdictional defect, it is an affirmative defense that must be timely raised or it is waived. See Jones v. Chagrin Falls (1997),77 Ohio St.3d 456, 674 N.E.2d 1388.
Although Koch raised constitutional claims in its declaratory-judgment action, Koch did not challenge the constitutionality of the ordinances or their application to Koch's property. Koch merely claimed that its due process and equal protection rights were violated because there were two other greenhouse operators that had strictly agricultural IDFs while Koch did not. Furthermore, Koch did not allege, and the record does not disclose, that following the administrative-appeal procedures provided by Cincinnati Municipal Code Chapter 720 would be onerous, expensive, or futile.
Because Koch failed to pursue administrative remedies in an effort to have its IDF changed, we hold that a declaratory-judgment claim was improper in this case. The trial court erred when it denied the city's motion to dismiss. Therefore, we sustain the city's second assignment of error in part.
The city correctly states that Koch, once it received its revised IDF of .6 from the SMU, failed to appeal and is therefore barred from challenging that rating. The record reveals, however, that Koch's IDF was again revised in 1991 to .67. Additionally, in 1998, Koch's property was reviewed by the SMU for possible adjustment of its IDF, but no change was made.
Cincinnati Municipal Code 720-65 states that a property owner may challenge an assessment if it is considered unjust or inequitable, and that such a challenge must be referred to the utility engineer within fifteen days after receipt of the fee. There is no provision in this section to preclude an owner from challenging a particular charge each time the owner receives a billing that is deemed unjust or inequitable. Based upon the reassessments of Koch's property by the SMU, and the assignment in 1991 of a new IDF of .67, Koch is not barred from challenging administratively the subsequent charges to its property.
Our holding renders moot the remainder of the city's second assignment of error and all of the city's first assignment of error. We reverse the decision of the trial court and remand this case so that the trial court may enter judgment in accordance with this decision.
Painter, P.J., Winkler and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.