OPINION
{¶ 1} Appellant, Tall Pines Holdings, Ltd ("appellant"), appeals from the February 18, 2004 judgment of the Franklin County Court of Common Pleas, affirming the decision of the Franklin County Board of Revision ("Board") finding appellant's property did not qualify for a tax reduction pursuant to the Current Agricultural Use Value ("CAUV") program. For the reasons that follow, we reverse.
 {¶ 2} In January 2001, appellant submitted six renewal applications, pursuant to R.C. 5713.31, to the Franklin County Auditor requesting CAUV status for certain acreage known as parcels 8297, 8299, 8300, 8301, 8302 and 8065. At that time, appellant also submitted one initial application for parcel 8298 requesting CAUV status.
 {¶ 3} Under the CAUV program, the county auditor disregards the highest and best use of the property and values the property according to its current agricultural use. Renner v. Tuscarawas Cty. Bd. of Revision
(1991), 59 Ohio St.3d 142, 572 N.E.2d 56. "Agricultural use" of land for the purpose of the CAUV program is defined by R.C. 5713.30(A) to be:
(A) "Land devoted exclusively to agricultural use" means:
(1) Tracts, lots, or parcels of land totaling not less than ten acres that, during the three calendar years prior to the year in which application is filed under section 5713.31 of the Revised Code, and through the last day of May of such year, were devoted exclusively to commercial animal or poultry husbandry, aquaculture, apiculture, the production for a commercial purpose of timber, field crops, tobacco, fruits, vegetables, nursery stock, ornamental trees, sod, or flowers, or the growth of timber for a noncommercial purpose, if the land on which the timber is grown is contiguous to or part of a parcel of land under common ownership that is otherwise devoted exclusively to agricultural use, or were devoted to and qualified for payments or other compensation under a land retirement or conservation program under an agreement with an agency of the federal government;
(2) Tracts, lots, or parcels of land totaling less than ten acres that, during the three calendar years prior to the year in which application is filed under section 5713.31 of the Revised Code and through the last day of May of such year, were devoted exclusively to commercial animal or poultry husbandry, aquaculture, apiculture, the production for a commercial purpose of field crops, tobacco, fruits, vegetables, timber, nursery stock, ornamental trees, sod, or flowers where such activities produced an average yearly gross income of at least twenty-five hundred dollars during such three-year period or where there is evidence of an anticipated gross income of such amount from such activities during the tax year in which application is made, or were devoted to and qualified for payments or other compensation under a land retirement or conservation program under an agreement with an agency of the federal government;
(3) A tract, lot, or parcel of land taxed under sections 5713.22 to5713.26 of the Revised Code is not land devoted exclusively to agricultural use;
(4) Tracts, lots, or parcels of land, or portions thereof that, during the previous three consecutive calendar years have been designated as land devoted exclusively to agricultural use, but such land has been lying idle or fallow for up to one year and no action has occurred to such land that is either inconsistent with the return of it to agricultural production or converts the land devoted exclusively to agricultural use as defined in this section. Such land shall remain designated as land devoted exclusively to agricultural use provided that beyond one year, but less than three years, the landowner proves good cause as determined by the board of revision.
"Land devoted exclusively to agricultural use" includes tracts, lots, or parcels of land or portions thereof that are used for conservation practices, provided that the tracts, lots, or parcels of land or portions thereof comprise twenty-five per cent or less of the total of the tracts, lots, or parcels of land that satisfy the criteria established in division (A)(1), (2), or (4) of this section together with the tracts, lots, or parcels of land or portions thereof that are used for conservation practices.
 {¶ 4} On August 17, 2001, appellant received correspondence from the Franklin County Deputy Auditor ("auditor") entitled "Denial of 2001 Current Agricultural Use Valuation (CAUV)." In the letter, the auditor stated his intent to deny all of appellant's CAUV applications unless it "provide[d] further information or documentation regarding [the parcels]" no later than September 21, 2001, and the "failure to qualify or contact this office will create a conversion[1] of the agricultural land."
 {¶ 5} The letter indicated information appellant could provide to the auditor's office in order for its land to qualify for CAUV status. The auditor stated that if appellant intended to let its land lay fallow, it needed to notify the auditor in writing by September 7, 2001. Further, the letter indicated that if appellant's land had been enrolled in a land retirement or farm conservation program, it must provide the auditor with such information. Finally, the letter stated that if appellant's land contained fewer then ten acres, "[the auditor] may also ask you to provide proof of at least $2500 gross income from the sale of agricultural products."
 {¶ 6} On November 21, 2001, appellant received the "Notice[s] of Recoupment Assessment" from the auditor. The notices stated that pursuant to R.C. 5713.35,[2] the parcels would be removed in whole or in part from the CAUV program for the 2001 tax year. Appellant asserts it was unaware the auditor had made a final decision to deny its applications for participation in the CAUV program until it received these notices.
 {¶ 7} On March 29, 2002, appellant appealed the auditor's decision to deny its CAUV applications to the Board. The Board conducted an evidentiary hearing on February 26, 2003. At the hearing, the auditor testified the August 17, 2001 letter: (1) was a "standard denial letter"; (2) was a form letter to indicate that the parcel[s] do not qualify for CAUV, and to gain further documentation from the parcel owner in order to qualify; and (3) did not list a specific reason for the denial of the CAUV applications. (Tr. at 13.) The auditor testified he never identified to Mr. James Sharp ("Sharp"), appellant's president, in writing the specific reasons for the rejection of appellant's CAUV applications.
 {¶ 8} The auditor testified he denied the renewal applications for the six parcels already enrolled in the CAUV program because the land devoted exclusively for agricultural use on these parcels was less then ten acres. Further, the auditor testified he denied CAUV status for parcel 8298 because it was adjacent to land comprising less than ten acres devoted exclusively to agricultural use, and therefore did not qualify as contiguous woodland.
 {¶ 9} Sharp testified on appellant's behalf. He testified at the time of the 2001 inspection, six to seven acres of land was devoted to agricultural use. Further, Sharp testified the property produced an average yearly gross income of more than $2500 during three calendar years prior to the CAUV applications. Sharp asserted he was unaware of the specific grounds for the auditor's denial of the CAUV applications, because the August 17, 2001 letter did not contain specific reasons supporting the auditor's determination that the land was not devoted exclusively for agricultural use. Sharp testified he contacted the auditor and asked him what information he could provide in support of his applications. However, Sharp testified that the auditor told him "any information [he] would provide would not be of any use * * * because it was impossible * * * for the property to be used after 2001 for commercial agriculture." Id. at 26.
 {¶ 10} On April 9, 2003, the Board affirmed the auditor's decision to deny appellant's CAUV applications. In its decision, the board stated, "We have had a [sic] opportunity to review the exhibits presented in the hearing. We have reviewed the testimony and at this time the Board is not convinced that these parcels meet the income requirement that would warrant reinstatement into the CAUV program. We also had some questions about the yield that these parcels would have to maintain to produce the amount of crop that was claimed during the year. We have looked at some historical agricultural statistical data and as a result of this it is a unanimous decision of this Board to deny reinstatement of these parcels into the CAUV program for the tax year 2000 and 2001." On April 11, 2003, the Board issued a notice that it had affirmed the order denying appellant's applications for the CAUV program.
 {¶ 11} Appellant appealed the Board's determination to the Franklin County Court of Common Pleas. The statutory record certified to the court contained the auditor's written testimony and documentary evidence, identified as Exhibit I Auditor CAUV Packet ("Exhibit One.") On September 15, 2003, appellant filed a Motion to Strike Exhibit One from the record, arguing that it had not been given any notice of the existence of the evidence or an opportunity to rebut the same. Appellant's motion was unopposed, and the court granted the Motion to Strike on October 27, 2003.
 {¶ 12} On February 18, 2004, the court affirmed the Board's decision to deny appellant's applications to participate in the CAUV program. In its decision, the trial court set forth its standard of review:
[The trial court's] review [under R.C. 5717.05] may be properly limited to a comprehensive consideration of existing evidence, and, in the court's discretion, to an examination of additional evidence. The court must consider all such evidence, noting, however, that the review is not de novo. Black v. Bd. Of Revision (1985), 16 Ohio St.3d 11, 14,475 N.E.2d 1264. The Court begins with the presumption that the actions were done in good faith, were an exercise of good judgment and are therefore valid. Diversified Mortg. Investors, Inc. v. Athens County Bd.of Revision (1982), 7 Ohio App.3d 157, 454 N.E.2d 1330. "The property owner must establish by probative and competent evidence that the decision of the Board of Revisions is in error. Cincinnati v. HamiltonCty. Bd. Of Revision (1994), 69 Ohio St.3d 301, 303, 631 NE.2d 1038. In determining whether Appellant's properlty is entitled to CAUV status, this Court will limit its review to the evidence submitted in the evidentiary hearing before the Board.
(February 18, 2004 Decision at 3.)
 {¶ 13} The court stated that the total acreage of appellant's land (without parcel 8298) was 9.9 acres, and only six to seven acres of that land was devoted exclusively for agricultural purposes. Thus, the court concluded that without parcel 8298, appellant's land was less than ten acres and was not devoted exclusively for agricultural purposes. Further, the court concluded parcel 8298 was not used for the growth of timber for commercial purposes. Because parcel 8298 was not contiguous to land devoted exclusively to agricultural use, the court stated it would not qualify for CAUV status.
 {¶ 14} The court also found appellant was afforded due process at the Board of Revision hearing. The court stated appellant was notified of the auditor's intention to deny its CAUV applications, and given the opportunity to present evidence to the Board in support of its applications for the CAUV program. The court observed that "[a]s the finder of facts, the Board is authorized to accept or not accept the evidence presented. In this case, the Board determined that Appellant failed to demonstrate that it qualified for participation in the program and properly affirmed the Auditor's decision."
 {¶ 15} On appeal, appellant presents the following four assignments of error for our review:
Assignment of Error No. 1
The decision of the trial court constitutes an abuse of discretion and a violation of due process where the auditor and board of revision refused to comply with statutorily mandated notice requirements, violated statutory and administrative rules concerning the offer and acceptance of evidence, and where the board of revision denied due process to Tall Pines holdings by considering testimony and evidence without affording tall pines an opportunity to answer that testimony and evidence.
Assignment of Error No. 2
The decision of the trial court constitutes an abuse of discretion where the court applied an incorrect standard of review, improperly ceded its independence to the board of revision, and where no competent, credible evidence remains in the record on which the board of revision or the trial court could base its conclusion that Tall Pines' applications should be denied.
Assignment of Error No. 3
The decision of the trial court constitutes an abuse of discretion where it sustains the finding that tall pines holdings is not eligible for participation in the cauv program for 2001.
Assignment of Error No. 4
The decision of the trial court constitutes an abuse of discretion where it concludes that compensation paid to Tall Pines, by odot, for the temporary loss of use of agricultural land does not constitute income from agricultural activity.
 {¶ 16} We begin by addressing appellant's second assignment of error. Therein, it argues that the trial court applied an inappropriate standard of review in its analysis of the Board's finding that its land did not qualify for the CAUV program.
 {¶ 17} R.C. 5717.05 provides for an appeal of a decision of a Board of Revision directly to the appropriate court of common pleas. In Black v.Board of Revision (1985), 16 Ohio St.3d 11, 16 OBR 363, 475 N.E.2d 1264, the Supreme Court of Ohio explained the trial court's standard of review on an appeal pursuant to R.C. 5717.05:
While R.C. 5717.05 requires more than a mere review of the decisions of the board of revision, that review may be properly limited to a comprehensive consideration of existing evidence and, in the court's discretion, to an examination of additional evidence. The court should consider all such evidence and determine the taxable value through its independent judgment. In effect, R.C. 5717.05 contemplates a decision denovo. It does not, however, provide for an original action or trial denovo. Selig v. Bd. of Revision (1967), 12 Ohio App. 2d 157, 165.
Black, at 14.
 {¶ 18} Accordingly, a trial court's analysis of the evidence should be thorough and comprehensive. This review ensures that a court's final determination is not a mere rubber stamping of the Board of Revision's determination, but rather an independent investigation and complete reevaluation of a Board of Revision's value determination. Id. Salamonv. Ryland (Dec. 21, 1999), Ashland App. No. 99-COA-01290. See, also, ParkRidge Co. v. Franklin Cty. Bd. of Revision (1987), 29 Ohio St.3d 12, 29
OBR 231, 504 N.E.2d 1116; In re Complaint Against the Valuation of RealProperty of Houston, Madison App. No. CA2004-01-003, 2004-Ohio-5091 at ¶ 6.
 {¶ 19} On appeal from the court of common pleas, our review is limited to whether the trial court's independent judgment constituted an abuse of discretion. Specifically, an appeals court should not question the trial court's decision, unless such determination is unreasonable, arbitrary, or unconscionable. Jennings Churella Constr. Co. v. Lindley (1984),10 Ohio St.3d 67, 70, 10 OBR 357, 461 N.E.2d 897.
 {¶ 20} In support of its position that the trial court applied the wrong standard of review, appellant contends the trial court incorrectly stated its review of the administrative record was "not de novo." Appellant contends this proposition is contrary to the Supreme Court of Ohio's decision in Black, supra, which requires the trial court to make an independent determination of the evidence properly before it.
 {¶ 21} In its explanation of the applicable standard of review, the trial court stated its role was limited to a comprehensive consideration of existing evidence in the administrative record, and, in the court's discretion, to an examination of additional evidence. Relying on Black,
the trial court found its review of this evidence was not de novo. To the contrary, Black states that R.C. 5717.05 contemplates a decision de novo by the trial court, and that the trial court should perform a thorough and comprehensive review of the evidence contained in the administrative record. Black, at 14. Thus, we find the trial court's statement that its "review was not de novo" was in error.
 {¶ 22} Appellee contends that "[w]hatever the Common Pleas Court may have meant by a `review de novo,' the Court gave the evidence a `comprehensive consideration' and `more than a mere review.'" (Appellee's Brief, at 20.) However, our reading of the trial court's decision reveals otherwise. The court's decision does not illustrate it performed an independent review of the evidence. Rather, the court found the Board was the "finder of fact" and that its standard of review required it to presume the Board's actions were valid.
 {¶ 23} In this case, the trial court stated its intention to apply an incorrect standard. Therefore, we must conclude that the trial court did indeed review the instant matter under that incorrect standard, and we cannot assume its findings were without error. Consequently, the trial court's judgment is erroneous as a matter of law and may not stand. We must reverse and remand the court's decision for review and consideration de novo by the trial court consistent with the standard of review found in Black.[3] See, also, Teamster Housing, Inc. v. McCormack (May 9, 1996), Cuyahoga App. No. 69583; Mazzola v. Bd. of Revision (Dec. 22, 1993), Summit App. No. C.A. 16254.
 {¶ 24} Appellant also argues under its second assignment of error that it presented evidence sufficient to demonstrate that the property value is different from that determined by the Board, and the Board had the duty to rebut that evidence. On our remand, the trial court will address the entire administrative record pursuant to Black, including the sufficiency of appellant's evidence. Thus, we need not address this issue.
 {¶ 25} Accordingly, appellant's second assignment of error is sustained to the extent that the trial court applied the improper standard of review, and the remainder of appellant's assignment of error is overruled as moot.
 {¶ 26} We now address appellant's first assignment of error. Therein, appellant claims it was not afforded due process at its hearing in front of the Board. Appellant first argues the Board failed to provide notice that Exhibit One was a part of the Board's investigation, and it was denied an opportunity to rebut this evidence. Appellant asserts the Board "engaged in an extrajudicial exploration of evidence outside of both the evidentiary hearing and the presence of Tall Pines, and based its decision on that evidence which has never been presented to [appellant.]" (Appellant's Brief, at 17.) Appellant acknowledges the court granted its motion to strike Exhibit One from the record, and therefore this evidence was not considered by the trial court. However, appellant contends that the Board's violation is not ameliorated by the court's action in granting its motion to strike. Appellant argues, "in an effort to correct this egregious error through successive appeals, [appellant] has been subjected to heightened, sometimes improper standards of review and compelled to argue and support basic evidentiary issues under heightened evidentiary tests." Id. at 19.
 {¶ 27} Appellee contends that because the court struck Exhibit One from the record and did not consider this evidence in rendering its decision, appellant's argument is without merit. We agree. Any potential prejudice that may have resulted from the Board's consideration of Exhibit One is cured by our remand to the trial court for its de novo review of the evidence properly before it.
 {¶ 28} Appellant further contends under its first assignment of error that it was not given adequate notice by the auditor regarding why the auditor believed its land did not qualify for CAUV. Appellant asserts that following the auditor's review of its applications, he did not return the applications to appellant detailing the information that he believed was incorrect or incomplete. Further, appellant asserts the auditor never provided notice of his reason for denying appellant's CAUV applications as required by R.C. 5713.32. Appellee contends the August 17, 2001 letter of the auditor's intention to deny appellant's CAUV applications "went beyond what the statues require." Thus, appellee asserts that appellant was fully aware of every issue it had to address in order to qualify its land for CAUV.
 {¶ 29} Due process rights guaranteed by the United States and Ohio Constitutions apply in administrative proceedings. Urban v. State Med.Bd. of Ohio, Franklin App. No. 03AP-426, 2004-Ohio-104 at ¶ 25 citingLTV Steel Co. v. Indus. Comm. (2000), 140 Ohio App.3d 680, 688,748 N.E.2d 1176. Due process mandates that prior to an administrative action which results in a deprivation of the individual's liberty or property, the governmental agency must afford that individual reasonable notice and opportunity to be heard. State, ex rel. Great Lakes Collegev. Medical Bd. (1972), 29 Ohio St. 2d 198. "An elementary and fundamental requirement of due process * * * is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Emphasis added.) Akron-Canton Regional Airport Authority v. Swinehart
(1980), 62 Ohio St.2d 403, 406, 406 N.E.2d 811, quoting Mullane v.Central Hanover Bank Trust Co. (1950), 339 U.S. 306, 314, 94 L. Ed. 865,70 S.Ct. 652.
 {¶ 30} R.C. 5713.32[4] addresses the notice required to be provided to a taxpayer whose land the auditor determines is not devoted exclusively to agricultural use:
Prior to the first Monday in August the county auditor shall notify, by certified mail, each person who filed an application or an amended application under section 5713.31 of the Revised Code and whose land the auditor determines is not land devoted exclusively to agricultural use,of the reason for such determination. A complaint against such determination may be made in the manner prescribed in section 5715.19 of the Revised Code.
 {¶ 31} In the November 21, 2001 recoupment notices, the auditor stated that pursuant to R.C. 5713.35 (the statute which governs conversion actions), the parcels would be removed in whole or in part from the CAUV program for the 2001 tax year. Based on the recoupment notices, it is apparent that the auditor had determined a conversion of appellant's land had occurred.[5] However, because we are remanding this matter for the trial court to apply the standard of review set forth in Black, we cannot base our analysis on the auditor's findings. Therefore, we will presume R.C. 5713.32 is applicable to the facts of this case, and address appellant's assignment of error as presented.
 {¶ 32} Assuming R.C. 5713.32 did apply in this case, we find appellant's due process rights were not violated. In the August 17, 2001 letter, the auditor indicated he would deny all of appellant's CAUV applications unless it "provide[d] further information or documentation regarding [the parcels]" no later than September 21, 2001, and the failure to qualify would create a conversion of the agricultural land. The auditor referred to information appellant could provide to the auditor's office in order for its land to qualify for CAUV status. Specifically, the auditor stated that: (1) if appellant intended to let its land lay fallow, it needed to notify the auditor in writing by September 7, 2001; (2) if appellant's land had been enrolled in a land retirement or farm conservation program, it must provide the auditor with such information; and (3) if appellant's land contained fewer than ten acres, "we may also ask you to provide proof of at least $2500 gross income from the sale of agricultural products."
 {¶ 33} Further, the auditor testified at the Board hearing regarding his specific reasons for denying appellant's CAUV applications. The auditor stated he denied appellant's renewal applications for CAUV because the land devoted exclusively for agricultural use on these parcels was less then ten acres. The auditor testified parcel 8298 was denied CAUV status because it was adjacent to land comprising less than ten acres devoted exclusively to agricultural use, and therefore did not qualify as contiguous woodland.
 {¶ 34} Accordingly, we find that the August 17, 2001 letter sufficiently advised appellant regarding the information the auditor required in order for his approval of its CAUV applications, and that its failure to provide the necessary information would be the reasons for denial of its CAUV applications. Further, appellant learned at the Board hearing of the specific reasons supporting the auditor's ultimate finding appellant's land did not qualify for CAUV status. Based on the foregoing, appellant was afforded ample opportunity to present evidence in support of its CAUV applications to the Board and on appeal to the court of common pleas.
 {¶ 35} For the foregoing reasons, appellant's first assignment of error is overruled. Appellant's second assignment of error is sustained to the extent that the trial court applied the inappropriate standard of review, and the remainder of appellant's second assignment of error is overruled as moot. Because we are remanding this matter, appellant's third and fourth assignments of error are also overruled as moot. The trial court's judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.
Judgment reversed; cause remanded.
Brown, P.J., and Petree, J., concur.
[1] (B) "Conversion of land devoted exclusively to agricultural use" means any of the following: (1) The failure of the owner of land devoted exclusively to agricultural use during the next preceding calendar year to file a renewal application under section 5713.31 of the Revised Code without good cause as determined by the board of revision; (2) The failure of the new owner of such land to file an initial application under that section without good cause as determined by the board of revision; (3) The failure of such land or portion thereof to qualify as land devoted exclusively to agricultural use for the current calendar year as requested by an application filed under such section; (4) The failure of the owner of the land described in division (A)(4) of this section to act on such land in a manner that is consistent with the return of the land to agricultural production after three years.
[2] R.C. 5713.35 provides in part: On or before the second Monday in September the county auditor shall examine the agricultural land tax list maintained under section 5713.33 of the Revised Code and determine if there has been a conversion of land devoted exclusively to agricultural use of any tract, lot, or parcel of land on such list. Upon determining there has been a conversion of land devoted exclusively to agricultural use the auditor shall determine the dollar amount of the charge levied against such tract, lot or parcel of land under section 5713.34 of the Revised Code and shall place such amount as a separate item on the tax list for the current tax year to be collected by the county treasurer in the same manner and at the same time as real property taxes levied against such land for the current calendar year are collected.
[3] We do agree with the trial court's finding that appellant may successfully challenge the Board's determination on appeal by providing competent and probative evidence to establish the correct value of the subject property is other than that established by the Board of Revision. Amsdell v. Cuyahoga Cty. Bd. Of Revision (1994),69 Ohio St.3d 572, 574, 635 N.E.2d 11; Cincinnati v. Hamilton Cty. Bd. OfRevision (1994), 69 Ohio St.3d 301, 303, 631 N.E.2d 1038, 1039.
[4] Our research reveals that Hardy v. Delaware Cty. Bd. Of Revision, a Board of Tax Appeals case which addressed the applicability of R.C.5713.32, is presently pending before the Supreme Court of Ohio. See Hardyv. Delaware Cty. Bd. Of Revision (July 30, 2004), B.T.A. case 2003-A-966, appeal pending, case No. 04-1417.
[5] We have previously held that the notice requirement under R.C.5713.32 is inapplicable to actions in which a conversion of land devoted exclusively to agricultural use has occurred. Rocky Fork Hunt CountryClub v. Testa 100 Ohio App.3d 570, 654 N.E.2d 429.