DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal of a judgment of the Lucas County Court of Common Pleas which affirmed a $10 million tax value for tax year 2003, upon a Toledo area apartment complex owned by appellant. The disputed $10 million tax value figure was decided by the Lucas County Board of Revision in response to an administrative complaint filed by appellant contesting the value.
 {¶ 2} The initial tax value for 2003, imposed by the Lucas County Auditor, was $10.5 million. Appellant's administrative complaint requested a reduction to $8.5 million. Appellant presented six primary pieces of evidence in support of an $8.5 million valuation.
 {¶ 3} Following a contested evidentiary hearing, the board of revision reduced the tax valuation from $10.5 million to $10 million, $1.5 million in excess of the valuation presented by appellant. The Lucas County Court of Common Pleas affirmed the $10 million valuation. For the following reasons, we reverse and remand to the trial court to enter judgment of tax value of $8.5 million for year 2003.
 {¶ 4} On appeal, appellant sets forth the following sole assignment of error:
 {¶ 5} "The trial court erred and abused its discretion when it affirmed the decision of the Lucas County Board of Revision regarding the value of the appellant's property."
 {¶ 6} The following undisputed facts are relevant to the issues raised on appeal. Appellant, American Tele-Legal Information Services, Ltd., owns the 200 unit "Quail Hollow at the Lake" apartment complex located in Springfield Township, Ohio. In its 2003 statutory triennial tax revaluation, the Lucas County Auditor's Office valued the premises at $10.5 million.
 {¶ 7} On December 18, 2003, appellant filed an administrative complaint with the Lucas County Board of Revision requesting a reduction in tax valuation from $10.5 million to $8.5 million. A full evidentiary hearing was conducted before the Board of Revision on September 30, 2004. Appellant presented supporting evidence to the board of revision which it argued was demonstrative of an $8.5 million tax valuation.
 {¶ 8} The record reveals that at the evidentiary hearing, the Springfield Township Board of Education and the Lucas County Auditor's Office submitted minimal evidence in support of the higher tax figure. On December 9, 2004, the board of revision decreased the 2003 tax valuation figure on appellant's premises from $10.5 million to $10 million, $1.5 million in excess of appellant's figure.
 {¶ 9} On January 5, 2005, appellant appealed the board of revision tax valuation figure to the Lucas County Court of Common Pleas pursuant to R.C. 5717.05. On March 1, 2006, the trial court affirmed the decision of the board of revision. Timely notice of appeal was filed.
 {¶ 10} In its sole assignment of error, appellant contends the trial court abused its discretion in affirming the higher property valuation figure of the board of revision. In support of its assignment, appellant argues that it furnished competent and probative evidence dispositively establishing a fair and accurate tax valuation figure to be $8.5 million. The nexus of our analysis is whether the record shows that appellant prevailed in establishing a lower property valuation by dispositive evidence. Did competent and probative evidence support the lower valuation over the disputed valuation?
 {¶ 11} The guiding legal framework in undertaking this analysis is whether the trial court abused its discretion in affirming the board of revision property valuation. Black v. Bd.Of Revision (1985), 16 Ohio St.3d 11, 14.
 {¶ 12} Case law on property tax valuation disputes sets forth the evidentiary burden. Appellant, as the taxpayer requesting a reduced tax valuation, bears the burden of submitting determinative proof in support of the lower tax figure. The taxpayer must demonstrate a disparity between the value established by the board of revision and the true value of the property. Cincinnati v. Hamilton Cty. Bd. of Revision (1994),69 Ohio St.3d 301, 303. By contrast, the auditor and board of revision have no such burden of proof. Restivo v. Bd. ofRevision of Ottawa Cty. (Dec. 30, 1999), 6th Dist. No. OT-990-52, at ¶ 3.
 {¶ 13} There are significant legal ramifications stemming from this unilateral burden of proof structure in tax valuation disputes. Although an appellee in a tax valuation dispute has no burden to defend its initial valuation, it bears the risk that the evidence presented by the appellant will be found dispositive when it presents limited or no rebuttal evidence. Restivo at ¶ 3.
 {¶ 14} Consistent with Restivo, R.C. 5717.05 grants the court of common pleas express statutory authority to decline to consider evidence in tax valuation disputes that was not presented to the board of revision. R.C. 5717.05 explicitly states, "the court may hear the appeal on the record and the evidence submitted, or it may hear and consider additional evidence." While it is true that appellees were under no statutory duty or legal burden to submit rebuttal evidence, their failure to do so opened the door to the above evidentiary risk.
 {¶ 15} The record reveals the trial court exercised its statutory authority granted by R.C. 5717.05 and declined to hear additional evidence sought to be introduced by appellees not presented to the board of revision. Nevertheless, the board of revision tax valuation figure was affirmed. Given this scenario, we must ascertain whether the trial court abused its discretion in affirming the disputed board of revision tax valuation based upon the evidence submitted to the board of revision in reaching its determination.
 {¶ 16} Our review of the record shows that appellant furnished six forms of evidence in support of an $8.5 million tax valuation. At the September 30, 2004 board of revision hearing, appellant submitted the following evidence for consideration:
 {¶ 17} 1. A written appraisal conducted by real estate appraiser and consultant Larry Degnan in June 2002, appraising the value of appellant's premises at $8.3 million, six months prior to the disputed tax year.
 {¶ 18} 2. Rent roll documentation showing a declining occupancy rate of the premises during the relevant time period. The occupancy of the premises stood at just 77 percent.
 {¶ 19} 3. Profit and loss statements for years 2002 through 2004 showing the property operated at a loss in an amount consistent with the decrease in occupancy.
 {¶ 20} 4. National business publication reports documenting a market wide decline in the residential apartment sector.
 {¶ 21} 5. Correspondence from a national brokerage firm which had been marketing appellant's property that documented the lack of a single offer to purchase. This occurred despite sophisticated and aggressive marketing of the property.
 {¶ 22} 6. Comparative market data establishing that the tax valuation of an analogous, nearby property to be set 20 percent lower than appellant's similar property.
 {¶ 23} In contrast to the ample supporting evidence submitted by appellant to the board of revision, appellees presented no compelling evidence in support of the higher tax figure. The record reflects appellees relied primarily on two pieces of evidence in support of their case.
 {¶ 24} Appellees argued that a marketing sales brochure showing appellant had listed the property for sale for over $15 million supported a higher tax valuation. In addition, appellees assert that a $12 million loan on the property which the marketing brochure stated, "must be assumed," also supports a higher tax valuation.
 {¶ 25} This argument fails to recognize the reality of free market price determination. Resale value cannot be realistically gauged by an optimistically high list price or a high mortgage balance. The market price is the maximum amount a willing buyer will pay to purchase the property. That price is subject to evolving market forces.
 {¶ 26} Appellant's objective evidence included occupancy rate, operating costs, profitability, valuation of a comparable property one-quarter mile away, and prevailing economic conditions. Appellant's evidence consisted of unbiased data relevant to market price determination. In contrast, appellees' subjective evidence of list price and mortgage amount are not of dispositive relevance. They represent what the seller desires the price to be and the amount the seller chose to finance, not what a prospective buyer would pay to purchase the property. Appellant's evidence of underlying investment viability factors prospective buyers would consider in apartment price determination is relevant and persuasive.
 {¶ 27} We find the evidence submitted by appellant in support of the $8.5 million valuation figure to be dispositive in comparison to the non-relevant figures relied upon by appellees.
 {¶ 28} We note that appellees attempted to submit an appraisal in support of their price to the trial court. The court concluded it need not consider it since it was not submitted to the board of revision. R.C. 5717.05. Regardless, our review of the appraisal sought to have been belatedly submitted by appellees reveals several features which would have rendered the rebuttal appraisal of limited value.
 {¶ 29} First, the rebuttal appraisal was not based upon an on-site property inspection. It was conducted via visual inspection from the street. The appraiser did not view the interior of the structures. In addition, the comparable sales data relied upon by the appraiser contained no parcels in the same township as the subject property. The properties included three complexes in Wood County, two complexes in the central city, five complexes in West Toledo, and two complexes in South Toledo. The comparable market data did not include any properties in close proximity to the subject property.
 {¶ 30} We are persuaded by appellant's position that the most comparable property is Fox Chase Apartments, located a quarter mile away from the subject premises in the same township, same school system, and same Spring Meadows neighborhood market area. This substantially similar property was valued 20 percent lower than appellant's premises. Appellees presented no persuasive rebuttal evidence to justify that discrepancy.
 {¶ 31} Our review of the record and application of the statutes and case law leads us to conclude the trial court's affirmance of the $10 million tax valuation by the board of revision was unreasonable given the facts and circumstances of this case.
 {¶ 32} The evidence presented by appellant in support of the lower tax valuation was more objective and persuasive than the limited, more subjective rebuttal evidence submitted by appellees. The trial court abused its discretion in upholding the board of revision determination. Appellant's assignment of error is found well-taken.
 {¶ 33} The judgment of the Lucas County Court of Common Pleas is reversed and remanded for judgment of tax value of $8.5 million for year 2003. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Pietrykowski, J., Parish, J., concur.